[Cite as *Recovery Funding, L.L.C. v. Beckman*, 2022-Ohio-1095.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Recovery Funding, L.L.C., | : | |
| Plaintiff-Appellant, | : | No. 20AP-592 |
| | | (C.P.C. No. 19CV-2521) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Brian Beckman et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 31, 2022

**On brief:** *Brunner Quinn*, and *Rick L. Brunner*, for appellant. **Argued:** *Rick L. Brunner*.

**On brief:** *Gillett Law Office, LLC*, and *Gary A. Gillett*, for appellee Patriarch-BT Holdings, LLC. **Argued:** *Gary A. Gillett*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Recovery Funding, L.L.C. ("Recovery"), appeals from a judgment of the Franklin County Court of Common Pleas granting the motion of defendant-appellee Patriarch-BT Holdings, L.L.C. ("Patriarch") for release of a portion of the cash deposits substituted as the security for four mechanic's liens. For the reasons which follow, we dismiss the appeal.

## I. Facts and Procedural History

{¶ 2} The events underlying the present dispute began in 2015 when Patriarch contracted with Buckeye Building Solutions, LTD ("Buckeye") to renovate and remodel several of Patriarch's properties. Buckeye began work on the project, but eventually stopped work at Patriarch's request. Although Patriarch paid Buckeye some amounts for

the work performed, Buckeye alleged that a balance remained due and owing which Patriarch refused to pay.

{¶ 3} In 2016, Buckeye recorded four mechanic's liens against Patriarch's properties. Buckeye recorded the following three liens on January 8, 2016: lien number 201601080002812 ("lien number 12") in the amount of $26,317.23 against 870 Carpenter Street; lien number 201601080002813 ("lien number 13") in the amount of $26,630.30 against 874 Carpenter Street; and lien number 201601080002814 ("lien number 14") in the amount of $19,172.01 against 837 Carpenter Street. On February 9, 2016, Buckeye recorded lien number 201602090016319 ("lien number 19") in the amount of $167,562.76 against 801, 684-686, and 627 Carpenter Street and 839, 822, 792, 781, 769, 765, 896, 860, and 598 Gilbert Street.

{¶ 4} In February 2016, Buckeye retained The Brunner Firm Co., L.P.A., d/b/a Brunner Quinn ("Brunner Quinn") pursuant to a written retainer agreement. In June 2016, Buckeye informed Brunner Quinn that it was working with another attorney, and Brunner Quinn withdrew from representing Buckeye. Buckeye allegedly failed to pay Brunner Quinn pursuant to the terms of the parties' agreement. Recovery is an assignee of Brunner Quinn.

{¶ 5} On June 22, 2017, in Franklin County M.C. No. 2017CVF020734, Recovery filed suit against Buckeye, Buckeye's managing member Edward Spiers, and Buckeye's project manager Nashon Owens (collectively, "the Buckeye defendants"). Recovery alleged that the Buckeye defendants owed Brunner Quinn, and by assignment owed Recovery, $10,096.64 plus interest, exemplary damages, punitive damages, attorney fees, and litigation costs. On September 12, 2017, the municipal court in case No. 2017CVF020734 granted judgment in favor of Recovery in the following amounts: $10,275.22 compensatory damages, $4,729.78 exemplary damages, and $1,617.50 in attorney fees, plus court costs and interest at the rate of 4 percent per annum.

{¶ 6} Shortly thereafter, in Franklin C.P. No. 17CV-8575, Recovery filed a creditor's bill complaint against Patriarch and the Buckeye defendants alleging the Buckeye defendants could not pay the judgment from M.C. case No. 2017CVF020734. Recovery asked the court to "order attachment in favor of and transfer to [Recovery] of [Buckeye's] interests in the real property and mechanic's liens [in lien numbers 12, 13, and 14]" and to

grant Recovery a "right to foreclose upon" mechanic's lien numbers 12, 13, and 14. (Mar. 25, 2019 Compl., Ex. 6, Enclosure 1, Creditor's Bill Compl., ¶ 16.2 & Prayer for Relief ¶ (B)(2).)

{¶ 7} The court in the creditor's bill action approved stipulated entries between Recovery and Patriarch ("Patriarch Stipulated Entry") and between Recovery, Buckeye, and Spiers ("Buckeye Stipulated Entry"). In the Patriarch Stipulated Entry, the parties agreed that Recovery's "right to be paid" by the Buckeye defendants would be "secured by a lien on the property interests [of the Buckeye defendants] described in" lien numbers 12, 13, and 14. (Ex. 3, Patriarch Stipulated Entry at 1.) The Buckeye Stipulated Entry obligated Buckeye and Spiers to make payments toward the judgment from M.C. case No. 2017CVF020734 pursuant to a monthly payment schedule, and provided that Buckeye's and Spiers' "agreements to perform" would be "secured by a lien on the property interests described in [lien numbers 12, 13, and 14]." (Ex. 4, Buckeye Stipulated Entry at 5.) The Buckeye Stipulated Entry granted Recovery "the declarations in ¶¶ 16.2" and "the relief prayed for in ¶ [(B)](2)" of the creditor's bill complaint. (Buckeye Stipulated Entry at 2.)

{¶ 8} On February 28, 2019, Patriarch served Buckeye and Recovery with a notice to commence suit on the four mechanic's liens. On March 25, 2019, Recovery filed the complaint in the present case against Patriarch, Brian Beckman, Mark Bucher, KSI Realty Holdings, L.L.C. ("KSI")[1] (collectively, "the Patriarch defendants"), the Buckeye defendants, and others, asserting a claim for foreclosure as to 837, 870, and 874 Carpenter Street and a claim for declaratory judgment. Recovery alleged that Buckeye and Spiers failed to make the payments required by the Buckeye Stipulated Entry, and further alleged that Recovery had "a security interest and the right to receive payment on behalf of Buckeye * * * for all of the mechanic's liens at issue, specifically those recorded at [lien numbers 12, 13, and 14]." (Compl. at ¶ 21). On May 3, 2019, Recovery filed a supplemental complaint, asserting a claim for foreclosure as to 684-686, 801, and 976 Carpenter Street, and 598, 627, 765, 769, 781, 792, 839, 860, and 896 Gilbert Street.

{¶ 9} On June 3, 2019, the Buckeye defendants filed a counterclaim and a cross-claim for foreclosure of the properties at 837, 870, 874, 684-686, 801, and 976 Carpenter Street, and 598, 627, 765, 769, 781, 792, 839, 860, and 896 Gilbert Street. The Buckeye

---

[1] After Buckeye recorded the four mechanic's liens, Beckman purchased the property at 874 Carpenter Street; Bucher purchased the property at 870 Carpenter Street; and KSI purchased the property at 684-686 Carpenter Street.

defendants alleged they were entitled to payment of the amounts stated in their mechanic's liens from the proceeds of the sales of the properties.

{¶ 10} On October 3, 2019, the Patriarch defendants filed a counterclaim against Buckeye and Spiers for slander of title. On October 3, 2019, Patriarch and KSI filed a counterclaim against Recovery, alleging Recovery violated Civ.R. 11 and R.C. 2323.51 by filing the supplemental complaint.  Recovery filed a counterclaim to Patriarch's and KSI's counterclaim, asking the court to award it attorney fees and costs associated with responding to the Civ.R. 11 claim.

{¶ 11} On December 11, 2019, Patriarch filed an application, pursuant to R.C. 1311.11(C), asking the court to approve alternate security in the form of cash deposits for each of the mechanic's liens.  The trial court granted Patriarch's application on December 19, 2019 and ordered Patriarch to submit cash deposits to the Franklin County Clerk of Court in the following amounts: for lien 12 $39,475.85; for lien 13 $39,945.45; for lien 14 $28,758.02; and for lien 19 $251,344.14. The court stated that, upon receipt of the cash deposits, the mechanic's liens would be discharged from the real properties at issue.

{¶ 12}  In the December 19, 2019 order, the court also dismissed Beckman, Bucher, KSI, and other parties from the action.  Following the December 19, 2019 order, the parties remaining in the action were Recovery, Patriarch, and the Buckeye defendants.

{¶ 13} On January 9, 2020, Recovery filed a second supplemental and amended complaint ("amended complaint") asserting claims for declaratory judgment, foreclosure, and execution upon the cash deposits. Recovery alleged that a September 23, 2019 judgment from the creditor's bill action awarded Recovery additional liens on Buckeye's liens, as the judgment granted Recovery "a lien on the mechanic's liens [in lien numbers 12, 13, and 14] and the other mechanic's liens held or claimed by [Buckeye] with a right to foreclose upon the same."  (Am. Compl., Ex. 7.)  Recovery alleged that the Patriarch Stipulated Entry, Buckeye Stipulated Entry, and September 23, 2019 judgment provided Recovery a "lien or interest in the cash deposits substituted for the relevant mechanics [liens]" and the right to "foreclose and/or execute upon the substituted cash [deposits]." (Am. Compl. at ¶ 22-24.)

{¶ 14} On February 10, 2020, the Buckeye defendants filed a counterclaim and a cross-claim for foreclosure as to the cash deposits, and a cross-claim against Patriarch for

breach of contract. The Buckeye defendants alleged that Patriarch breached the parties' agreement by terminating Buckeye.

{¶ 15} On February 26, 2020, Patriarch filed a counterclaim to Buckeye's cross-claim, asserting claims for breach of contract and slander of title. Patriarch alleged that Buckeye breached the parties' contract by "misrepresent[ing] the work that had been completed, and receiv[ing] payment for work that had not been performed." (Feb. 26, 2020 Patriarch Counterclaim at ¶ 6.)

{¶ 16} Patriarch filed a motion asking the court to release a portion of the cash deposits on May 25, 2020. Patriarch asserted that Buckeye's Civ.R. 30(B)(5) representative, Nashon Owens, admitted in his January 23, 2020 deposition that the amount Buckeye claimed for unpaid labor or materials resulting from the Patriarch project was $22,246.17. As such, Patriarch argued that Buckeye's mechanic's liens in excess of $22,246.17 were invalid. Patriarch asked the court to release the entire amount of the cash deposits substituted as the security for lien numbers 12, 13, and 14, and to release a large portion of the cash deposit substituted as the security for lien number 19. On July 22, 2020, Recovery and Buckeye filed a joint memorandum contra Patriarch's motion to release the cash deposits.

{¶ 17} The trial court granted Patriarch's motion to release the cash deposits on November 20, 2020. The court observed that, pursuant to R.C. 1311.02, Buckeye could only obtain a mechanic's lien for work performed or materials furnished. The court concluded that Owens' deposition demonstrated "the unpaid labor and materials in th[e] case [was] $22,246.17, but the Mechanic's Liens were based upon work that had not yet been performed." (Nov. 20, 2020 Decision at 2.) As such, the court ordered the release of the entire cash deposits substituted for lien numbers 12, 13, and 14, and ordered the release of $217,974.88 of the cash deposit substituted for lien number 19. The November 20, 2020 entry did not contain a certification pursuant to Civ.R. 54(B) finding no just reason for delay.

## II. Assignment of Error

{¶ 18} Recovery appeals from the November 20, 2020 entry and assigns the following error for our review:

> THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S [sic] MOTION FILED MAY 25, 2020 AND

NOT APPLYING THE STANDARDS OF CIV.R. 56 WHILE ESSENTIALLY TERMINATING A LARGE PORTION OF THE PLAINTIFF'S CLAIM.

### III. Analysis

{¶ 19} Recovery's sole assignment of error asserts the trial court erred by granting Patriarch's motion to release the cash deposits. Recovery contends the trial court lacked authority to release the cash deposits and erred by failing to treat Patriarch's motion like a motion for summary judgment.

{¶ 20} R.C. 1311.02 provides that every person "who performs work or labor upon or furnishes material in furtherance of any improvement undertaken by virtue of a contract" with the owner of real estate, "has a lien to secure the payment therefor." " 'The purpose of the mechanics' lien law is to provide a contractor or materialman with a means of obtaining a lien on real estate to secure a claim for labor performed or material supplied.' " *Flemco, L.L.C. v. 12307 St. Clair, Ltd.*, 8th Dist. No. 105956, 2018-Ohio-588, ¶ 20, quoting *Thrush v. Thrush*, 3d Dist. No. 14-86-17 (Apr. 26, 1988).

{¶ 21} R.C. 1311.11 permits a common pleas court to grant an application approving a cash deposit "in the amount of one and one-half times the amount of the" mechanic's lien. R.C. 1311.11(C)(1). If the court approves the cash deposit, the cash deposit is "substituted for the security of the lien, and the lien is void and the property wholly discharged from the lien." R.C. 1311.11(C)(3). Thus, R.C. 1311.11(C) permits a cash deposit to "take the place of the [mechanic's] lien on the real estate thereby in effect clearing title to the real estate." *In re Mechanics' Lien of Whitta*, 7 Ohio App.3d 153 (3d Dist.1982), paragraph one of the syllabus.

{¶ 22} When "an action on the lien has been * * * commenced," and a cash deposit is substituted as the security for the mechanic's lien, the "action on the lien may proceed as an action on the * * * cash deposit." R.C. 1311.11(C)(3). R.C. 1311.11 provides that "a cash deposit * * * is released, upon failure of the lienholder to commence suit within [60 days after service of a notice to commence suit], or if a suit on the security is dismissed with prejudice to the plaintiff or judgment is entered against the plaintiff." R.C. 1311.11(C)(3). Recovery contends that the court's order releasing the cash deposits violated R.C. 1311.11(C)(3).

{¶ 23} Patriarch asserts this court lacks jurisdiction to address the present appeal because the trial court's November 20, 2020 entry was not a final appealable order. In response, Recovery contends that the order releasing the cash deposit was "a 'judgment' for purposes of Civ.R. 54 and [R.C.] 2505.02." (Reply brief at 1.)

{¶ 24} An appellate court has jurisdiction to review only final orders or judgments of the trial courts in their district. Article IV, Section 3(B)(2), Ohio Constitution. " 'The entire concept of "final orders" is based upon the rationale that the court making an order which is not final is thereby retaining jurisdiction for further proceedings. A final order, therefore, is one disposing of the whole case or some separate and distinct branch thereof.' " *Browder v. Shea*, 10th Dist. No. 04AP-1217, 2005-Ohio-4782, ¶ 10, quoting *Noble v. Colwell*, 44 Ohio St.3d 92, 94 (1989). "An appellate court may raise the jurisdictional question of whether an order is final and appealable sua sponte and must dismiss an appeal that is not taken from a final, appealable order." *Riverside v. State*, 190 Ohio App.3d 765, 2010-Ohio-5868, ¶ 8 (10th Dist.).

{¶ 25} A trial court's order is final and appealable only if it satisfies the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88 (1989). R.C. 2505.02(B) sets forth categories of final orders, providing in pertinent part as follows:

> An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
>
> (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
>
> * * *
>
> (4) An order that grants or denies a provisional remedy and to which [two other requirements apply].

{¶ 26} A substantial right involves the idea of a legal right that will be enforced and protected by law. *Noble* at 94, citing *North v. Smith*, 73 Ohio St. 247 (1906). *Accord* R.C. 2505.02(A)(1). "An order affects a substantial right * * * only if an immediate appeal is

necessary to protect the right effectively." *Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, ¶ 7.   *See Hillman v. Kosnik*, 10th Dist. No. 05AP-122, 2005-Ohio-4679, ¶ 20, citing *Burt v. Harris*, 10th Dist. No. 03AP-194, 2004-Ohio-756, ¶ 12 (stating that although an order may "*involve* substantial rights," the order is not final unless it "*affects* these substantial rights").  (Emphasis sic.)

{¶ 27} Civ.R. 54(B) provides as follows:

> When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon and express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

{¶ 28} Thus, in multiple-claim or multiple-party actions, if the court enters judgment as to some, but not all, of the claims and/or parties, the judgment is a final, appealable order only upon the express determination that there is no just reason for delay. *Gen. Acc. Ins. Co. v. Ins. Co. of N. America*, 44 Ohio St.3d 17, 22 (1989).  "For purposes of Civ.R. 54(B) certification, the trial court makes a factual determination of whether or not an interlocutory appeal is consistent with the interests of sound judicial administration." *Peppers v. Scott*, 10th Dist. No. 15AP-929, 2016-Ohio-8265, ¶ 12, citing *Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 354 (1993).  "In the absence of express Civ.R. 54(B) language, an appellate court may not review an order disposing of fewer than all claims." *Internatl. Bd. of Electrical Workers, Local Union No. 8 v. Vaughn Industries, L.L.C.*, 116 Ohio St.3d 335, 2007-Ohio-6439, ¶ 8.

{¶ 29} In *James v. Top of the Hill Renovations*, 10th Dist. No. 15AP-888, 2016-Ohio-1190, this court concluded that a trial court's entry "releasing the [entire] cash bond deposited by [James] as security of the amount of the claim previously secured by the [mechanic's] lien [was] a 'judgment' for purposes of Civ.R. 54 and R.C. 2[5]05.02 * * * from

which an appeal may lie." *James* at ¶ 20. Relying on this statement from *James*, Recovery contends that the order releasing the cash deposits in the present case was a final appealable order.

{¶ 30} The present case differs significantly from *James*. *James* concerned one cash deposit substituted as the security for one mechanic's lien, and the entry releasing the cash deposit completely resolved the case at issue. *See id* at ¶ 3-4. The present case concerns four cash deposits substituted as the security for four mechanic's liens. While the court's order released the entirety of the cash deposits substituted for lien numbers 12, 13, and 14, the order did not release the entire cash deposit substituted for lien number 19. Recovery's supplemental complaint asserted a claim for foreclosure of the properties encumbered by lien number 19, and Recovery's amended complaint appeared to claim an interest in the cash deposits substituted for all the mechanic's liens.

{¶ 31} However, because the lack of Civ.R. 54(B) language is dispositive in the present case, we need not resolve whether the November 20, 2020 entry was a final order under either R.C. 2505.02(B)(1) or (2). *See Kormanik v. Cooper*, 190 Ohio App.3d 184, 2010-Ohio-4745, ¶ 11 (10th Dist.) (stating that "when a trial court's decision does not dispose of all claims in a case, in the absence of certification by the trial court that there is no just reason for delay, we need not even consider whether the order constitutes a final order for purposes of R.C. 2505.02"); *Fid. Tax, L.L.C. v. Hall*, 10th Dist. No. 14AP-241, 2014-Ohio-4448, ¶ 12, fn.1 (stating that an appellate court need not "consider whether the judgment entry before us is a final order under R.C. 2505.02 because the lack of Civ.R. 54(B) language is dispositive"); *Moore v. Gross*, 10th Dist. No. 09AP-1077, 2010-Ohio-3328, ¶ 13.

{¶ 32} The present case involves multiple parties and multiple claims, and the court's order releasing the cash deposits did not resolve all claims pending against all parties or contain Civ.R. 54(B) language. The order releasing the cash deposits also did not render all claims pending in the action moot. *See Gen. Acc. Ins. Co.* at 21, citing *Wise v. Gursky*, 66 Ohio St.2d 241 (1981) (holding that if the effect of the trial court's judgment "is to render moot the remaining claims or parties, then compliance with Civ.R. 54(B) is not required to make the judgment final and appealable"); *State ex rel. A & D Ltd. Partnership v. Keefe*, 77 Ohio St.3d 50, 57 (1996). An order releasing a cash deposit substituted as the

security for a mechanic's lien does not "prevent the lienholder from obtaining a judgment in a subsequent action on the contract" underlying the lien. *James* at ¶ 20. *See also Jaric, Inc. v. Chakroff*, 63 Ohio App.3d 506, 512 (10th Dist.1989) (stating that the "[f]ailure to allege and prove a valid mechanic's lien does not bar a cause of action between the direct parties to the underlying contract"); R.C. 1311.11(B)(3) (stating that, even if the mechanic's lien is void as a result of the lienholder's failure to commence suit within 60 days after service of the notice to commence suit, the "claim upon which the lien was founded is not prejudiced").

{¶ 33} Accordingly, at minimum, Buckeye's and Patriarch's respective claims for breach of contract remain pending in the action. Therefore, even if we were to assume the court's order releasing the cash deposits was a final order, because claims remain pending in the action and the order does not contain Civ.R. 54(B) language, the order could not be a final appealable order.

{¶ 34} Although an order "granting or denying a provisional remedy is not subject to the requirements of Civ.R. 54(B)," the November 20, 2020 entry was not an order granting or denying a provisional remedy for purposes of R.C. 2505.02(B)(4). *State ex rel. Butler Cty. Children Servs. Bd. v. Sage*, 95 Ohio St.3d 23, 25 (2002). *Accord State ex rel. DeWine v. Precourt Sports Ventures, L.L.C.*, 10th Dist. No. 18AP-342, 2018-Ohio-2414, ¶ 16. R.C. 2505.02 defines a "[p]rovisional remedy" as a "proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, [or] suppression of evidence." R.C. 2505.02(A)(3). A provisional remedy is an ancillary proceeding " 'that is attendant upon or aids another proceeding.' " *State v. Muncie*, 91 Ohio St.3d 440, 448 (2001), quoting *Bishop v. Dresser Industries, Inc.*, 134 Ohio App.3d 321, 324 (3d Dist.1999). *See Whipps v. Ryan*, 10th Dist. No. 12AP-685, 2013-Ohio-4382, ¶ 14 (stating that a proceeding to declare a party a vexatious litigator is a provisional remedy); *Muncie* at 450 (holding that "a petition for forced medication under R.C. 2945.38 is a 'provisional remedy' ancillary to the criminal action undertaken by the state against an incompetent defendant").

{¶ 35} Recovery's interest in and ability to recover funds from Buckeye's mechanic's liens was the central issue in the present case. Accordingly, Patriarch's motion to release the cash deposits substituted as the security for the mechanic's liens did not involve a

proceeding ancillary to the action but, rather, sought to resolve a significant portion of the main action. *See Mandalaywala v. Omnitech Electronics*, 10th Dist. No. 09AP-696, 2010-Ohio-2729, ¶ 21 (stating that, as the "trial court's decision setting aside the original auction and sale [went] to the heart of [the] plaintiff's complaint," it was "not made in a proceeding ancillary to [the] plaintiff's complaint"); *Jenkins v. Northeastern Local Bd. of Edn.*, 2d Dist. No. 16CA0002, 2016-Ohio-7099, ¶ 5 (stating that, as the order "did not concern a proceeding ancillary to the main action," but was "directed toward resolution of the main action itself" the order did not concern a provisional remedy); *State v. Tate*, 179 Ohio App.3d 71, 2008-Ohio-5686, ¶ 21 (7th Dist.).

{¶ 36} As the November 20, 2020 entry did not dispose of all claims between all parties or contain an express determination that there was no just reason for delay, it was an interlocutory order. *Lingo v. Ohio Cent. RR., Inc.*, 10th Dist. No. 05AP-206, 2006-Ohio-2268, ¶ 17. "A trial court may reconsider and revise an interlocutory order at any time before the entry of final judgment," and may "vacate an interlocutory order during the pendency of an action." *Huntington Natl. Bank v. Haehn*, 10th Dist. No. 17AP-342, 2018-Ohio-4837, ¶ 24, citing Civ.R. 54(B) and *Palmer v. Bowers*, 9th Dist. No. 15CA010836, 2017-Ohio-355, ¶ 11. *See Smith v. Williams*, 10th Dist. No. 09AP-732, 2010-Ohio-1381, ¶ 30-31. Accordingly, the trial court may reconsider, revise, or vacate the order releasing the cash deposits at any time before the entry of final judgment in the case.

## IV. Conclusion

{¶ 37} As the November 20, 2020 entry from which Recovery appeals is not a final appealable order, we lack jurisdiction to consider the merits of Recovery's sole assignment of error. We therefore dismiss this appeal.

*Appeal dismissed.*

LUPER SCHUSTER, P.J., and JAMISON, J., concur.

_____